**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

|  |  |  |
|---|---|---|
| **IN RE: CHARLES AND JUANITA STATES,** | ) ) |  |
| Debtors. | ) ) ) ) ) ) ) | **CASE NO. 7-04-00510** <br><br> **CHAPTER 7** |

_____

**MEMORANDUM DECISION**

The matters before the Court are the Debtors' Motion to Reconvert to Chapter 13 and a Motion for Relief from Stay filed by Virginia Housing Development Authority ("VHDA"), first deed of trust holder on the Debtors' home. The Debtors filed their case as a Chapter 13 on February 9, 2004. It was converted to a Chapter 7 on February 12, 2005 upon the Debtors' motion, but VHDA filed its Motion for Relief on February 22, 2005 and the Debtors now wish to reconvert to Chapter 13. The VHDA filed a response asking that the Debtors' motion be denied. A trial was held on the matters on April 25, 2005 at which both Debtors testified and the Trustee opposed the Motion. The Trustee filed a further response advising the Court as to the funds necessary for a confirmable plan, and the VHDA filed a response in support of the Trustee's response. The Debtors have filed a reply and the matter is now ready for decision..

FINDINGS OF FACT

The Debtors filed this case as a Chapter 13 on February 9, 2004, filing their plan February 25, 2005, which was confirmed without objections on April 19, 2004. The VHDA filed its first Motion for Relief on June 7, 2004, alleging that the Debtors had failed to make

1

three post-petition house payments of $505.10 each.  A hearing was held on the matter and an Agreed Order was entered denying the motion upon the condition that the Debtors make their July and August mortgage payments by dates certain.  If the Debtors failed to do so, the Order provided that VHDA could file a Certification, which would give the Debtors five days to respond or the Movant would have relief from the stay without further notice or order of the Court.  The case was continued to September 27, 2004, on which a hearing was held and the Debtors were given 15 days to file a modified plan to cure the arrearages.  An amended plan was filed October 15, 2004 and the Motion for Relief was dismissed on the motion of VHDA on October 26, 2004.  At the confirmation hearing on the modified plan, the plan was denied due to an inconsistency between the amount noticed to be paid to unsecured creditors and the amount that the Trustee calculated the plan would actually pay.  A further amended plan was filed January 10, 2005, but the Court converted the case to a Chapter 7 upon the Debtors' motion on February 11, 2005 before any confirmation hearing was held.

    VHDA filed its second Motion for Relief from Stay on February 22, 2005 alleging that the Debtors had failed to make 12 regular monthly mortgage payments beginning with the payment due on March 1, 2004.  In the Movant's Certification, VHDA indicated that there was an unpaid principal balance of $46,400.15 (on the original principal amount of $49,742); accrued interest of $3,745.85; late charges of $580.82; attorney fees due of $500; advances for taxes, insurance and "the like" of $1,188.04 plus miscellaneous charges totaling $302.50.  The VHDA listed the 2005 Real Estate Tax Assessment of $75,700 as its valuation of the property. In the Debtors' response, they admitted some arrears and promised to send $1,000 to Counsel for VHDA by the hearing date set for the matter of March 28, 2005.  The Debtors

also indicated that they had approximately $23,000 of equity in the house which would ensure the future performance of the Debtor's payment obligations.

The Debtors filed a Motion to Reconvert their case to a Chapter 13 on March 15, 2005, which was noticed for hearing on April 25, 2005. On the same day, the Debtors filed an Amended Schedule J. At the hearing on the Motion for Relief on March 28, Counsel for VHDA argued that the Debtors had only paid $510 as of that date, not the $1000 promised in their response to the Motion. Counsel for the Debtors represented that the Debtors had the remainder of the $1000 available for payment. She also indicated that the Debtors had believed they would be able to pay off the arrearages with the help of family, but were unable to do so. Apparently the Debtors had considered selling their home, but were unable to get any offers in the price range they had hoped, so they wished to convert back to a Chapter 13 in order to retain their home. The Motion for Relief was continued to be heard with the Motion to Reconvert.

At the hearing on both motions on April 25, 2005, both Debtors testified. Mr. States testified that although they had many troubles in 2004, he had received a promotion and his wife had obtained a second job in the past few months and they had changed their financial practices. He indicated that he would be happy to submit to a wage deduct order for the mortgage and the Chapter 13 plan payments. When questioned about his promotion, he indicated that he was taking home an additional $680 per month and that his pay was likely to continue to increase over the next six to eight months. He testified that they had converted their case to a Chapter 7 because they thought that selling their home would allow them to pay their creditors. Mrs. States testified that she had started a new job working at a day care to which she could bring her youngest child while she worked and that she was paid approximately $700 a

3

month for that work, in addition to the income she received from a paper route she had with the Roanoke Times. The Debtors introduced pay stubs from Mr. States' employer and both of Mrs. States' employers. The Debtors' testimony approximately agrees with the exhibits.  It appears from the pay stubs that the Debtors should net approximately $4,375.61[1] per month in take-home pay.  At the close of the hearing, the Trustee opposed the Motion to Reconvert stating that she did not believe the Debtors were acting in good faith, that they had not demonstrated an ability to perform in a Chapter 13 plan and that the Debtors had not complied with a duty to report changes in income.[2] It is  true that the Debtors did not file an amended Schedule I upon either the commencement of Mrs. States' second job or upon the effective date of Mr. States' promotion and coinciding pay raise.  The Court took the Motion under advisement, allowing the Trustee to report as to a monthly payment amount which the Debtors would need to pay to propose a confirmable plan.  In her report, the Trustee indicated that the Debtors would need to make payments of $926.41 per month beginning in May 2005 in order to pay the amounts proposed in their confirmed plan and further stated that she remained opposed to the Debtors' Motion. VHDA filed a response in support of the Trustee's response.  The Debtors filed a response to the

---

[1] This figure was obtained from an average of the two pay stubs submitted for Mrs. States paper route (paid monthly), plus the average of the two bi-weekly pay stubs from Mrs. States job at the child care center multiplied by 26 and divided by 12, plus the net pay from Exhibit 3 multiplied by 26 divided by 12..

[2] The Trustee did not state a basis for the "duty to report changes in income." The Court has been unable to find any statutory basis for a requirement that Debtors amend their schedules to reflect a change in income. Bankruptcy Rule 1009 provides for permissive amendment of schedules by the debtor and Bankruptcy Rule 1007(h) provides for mandatory amendment of schedules by the debtor when "as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property", which refers to property acquired by inheritance, divorce settlement, life insurance, etc.

Trustee in which they reiterated their arguments that they had substantial increases in their income from the prior plan and that they had converted to a Chapter 7 under the impression that they could make payment arrangements with the mortgage company but that the mortgage company had refused to do so, causing them to move to reconvert.

*Good faith*

   The Trustee and VHDA have alleged bad faith on the part of the Debtors. The Court acknowledges that direct evidence of bad faith is rare and that circumstantial evidence of is generally all the evidence available for a finding of bad faith. Still, the Court does not believe that there is enough circumstantial evidence that the Debtors' Motion to Reconvert was filed in bad faith, rather the Court finds compelling the testimony of Mr. States wherein he stated he was committed to "doing whatever it takes" to retain his house and attempt to pay his creditors. Thus the Court finds, based on the Debtors' substantially improved income, the testimony of both Debtors, and the Court's opportunity to observe their demeanor, that the Debtors have filed this Motion with a sincere good faith belief that they can propose a confirmable Chapter 13 Plan and complete it successfully.

*Ability to perform*

   Based on the evidence of the Debtors' recent paycheck stubs introduced at the hearing upon their motion to reconvert, as noted above, it appears that the Debtors should average at least $4,375.61 per month in take-home pay. On the Debtors' Amended Schedule J, the Debtors list monthly expenses of $3,874.17. The amount on Schedule J appears to include payments on the two vehicles which would be paid under the plan, however. Schedule J also includes a miscellaneous expense of $250 per month. Subtracting the $500 in payments for the

vehicles and the miscellaneous expense, the Debtors have monthly expenses of $3,124.17. This leaves a net income of $1,251.44 for the Debtors to make the plan payments of $926.41 as determined by the Trustee and have a significant cushion for unexpected expenses. By setting up on automatic mode of payment for both the mortgage payment and the Trustee payment, the Debtors should be able to comply with the provisions of a confirmable Chapter 13 plan.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Conversion between Chapters 7 and 13 of the Bankruptcy Code and the granting or denial of motions for relief from the automatic stay are "core" bankruptcy matters pursuant to 28 U.S.C. § 157(b)(2)(A) and (G), respectively.

The Bankruptcy Code seems to prohibit a debtor from converting to a Chapter 13 after having already converted from a Chapter 13 to a Chapter 7. 11 U.S.C. § 706(a) states in pertinent part that "the debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." The legislative history on § 706 does not help to clarify the issue:

> Subsection (a) of this section gives the debtor [the] one[-time] absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already one been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given this opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.

Several courts have considered § 706(a) and concluded that a Chapter 13 debtor

6

cannot convert from Chapter 13 to Chapter 7 and then reconvert to Chapter 13. Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 328.1 at p. 328-1 (2000 and Supp. 2004)(citing *In re Hardin*, 301 B.R. 298, 300 (Bankr. C.D. Ill. 2003)("The language of Section 706(a) gives debtors a right to convert only if the case has not previously been converted. . . . Since the DEBTOR previously exercised her right to convert from Chapter 13 to Chapter 7, she no longer has the option of re-converting back to Chapter 13."); *In re Baker* 289 B.R. 764, 766-67 (Bankr. M.D. Ala. 2003)(reconversion to a Chapter 13 not allowed)). Other courts have permitted such a reconversion, however. *See In re Sensibaugh*, 9 B.R. 45 (Bankr. E.D. Va. 1981)(holding that in the absence of objection, a debtor can convert from Chapter 7 to Chapter 13 despite a prior conversion to Chapter 7 from Chapter 11); *In re Hollar*, 70 B.R. 337 (Bankr. E.D. Tenn. 1987) (holding that conversion from Chapter 11 to Chapter 7 exhausts the debtor's "absolute right" to convert; however, "permissive" conversion from Chapter 7 to Chapter 13 is still possible because public policy favors repayment of debt); and *In re Johnson*, 116 B.R. 224 (Bankr. D. Idaho 1990)(a request for reconversion back to Chapter 13 after a conversion from Chapter 13 to Chapter 7 granted after a finding that such request was "founded upon genuine desire and ability to confirm a plan".  While the *Sensibaugh* case has not been cited by any later Fourth Circuit authority, it has been criticized by courts in other Circuits, namely, those ultimately determining that reconversion is not permissible.  *E.g., In re Banks*, 252 B.R. 399, 400 (Bankr. E.D. Mich. 2000), *In re Baker*, 289 B.R. 764 (Bankr. M.D. Ala 2003); and *In re Hardin*, 301 B.R. 298 (Bankr. C.D. Ill. 2003).  This Court has found no authority from any court in the Fourth Circuit on this issue other than the *Sensibaugh* case but finds its rationale more persuasive and notes that its approach is adopted by Collier on Bankruptcy.  *See* 6 Collier on Bankruptcy § 706.04 at p.

7

706-8 and -9 (LexisNexis, Matthey Bender 2004); *In re Johnson*, 116 B.R. 224 (Bankr. D. Idaho 1990).

The question of the Debtors' good faith in filing their Motion to Reconvert may be said to be a mixed one of fact and law. To the extent that the Debtors' good faith and ability to perform a confirmable Chapter 13 Plan providing for, among other things, the proper cure of their defaulted mortgage securing the VHDA debt, involve matters of law, the Court concludes that their motion has been filed in good faith and that the Debtors have the financial ability to complete successfully a confirmable Plan. In view of the substantial equity in the Debtors' home, the substantial improvement of their available income to meet their obligations and this Court's assessment of their sincere desire and intent to obtain confirmation of and successfully complete a Chapter 13 Plan, the Court by separate order will grant the motion of the debtors to re-convert to Chapter 13 and deny the Motion for Relief filed by VHDA at this time, but schedule the Motion for Relief for a final hearing on the date set by the Clerk's office for the confirmation hearing for the plan to be filed in the Debtors' case.

ENTER this 8th day of June, 2005.

*William F. Stone, Jr.*
UNITED STATES BANKRUPTCY JUDGE